UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SHANNON D. HOUSTON,

                     Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                     Defendant.
_____



**DECISION AND ORDER**

1:18-CV-00449 EAW

## INTRODUCTION

Represented by counsel, Plaintiff Shannon D. Houston ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 10; Dkt. 14), and Plaintiff's reply (Dkt. 15). For the reasons discussed below, the Commissioner's motion (Dkt. 14) is granted and Plaintiff's motion (Dkt. 10) is denied.

## BACKGROUND

Plaintiff protectively filed her applications for DIB and SSI on November 17, 2014. (Dkt. 9 at 17, 68-69).[1] In her applications, Plaintiff alleged disability beginning November 1, 2014, due to several impairments, including: anxiety; depression; arthritis in her back; post-traumatic stress disorder; paranoid schizophrenia; a hyperactive thyroid (Graves' Disease); and that she is forgetful and has extreme fatigue. (*Id.* at 17, 70, 83). Plaintiff's applications were initially denied on April 9, 2015. (*Id.* at 17, 112-19). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Lisa B. Martin on March 22, 2017. (*Id.* at 17, 34-67). Plaintiff appeared in Buffalo, New York, and the ALJ presided over the hearing from Alexandria, Virginia. (*Id.*). On May 2, 2017, the ALJ issued an unfavorable decision. (*Id.* at 14-27). Plaintiff requested Appeals Council review; her request was denied on February 27, 2018, making the ALJ's determination the Commissioner's final decision. (*Id.* at 5-7). This action followed.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C.

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

§ 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II. <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a

finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* §§ 404.1520(d), 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id.* §§ 404.1509, 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* §§ 404.1520(e), 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id.* §§ 404.1520(f), 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* §§ 404.1520(g), 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

# DISCUSSION

## I. The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920. Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act on December 31, 2016. (Dkt. 9 at 19). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since November 1, 2014, the alleged onset date. (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: lumbar spine disorder; obesity; hypertension; hypothyroidism; depression; anxiety with post-traumatic stress disorder (PTSD); schizoaffective disorder; and history of substance abuse. (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 20). The ALJ particularly considered the criteria of Listings 1.00, 4.00, 11.00, and 12.00 in reaching her conclusion, as well as considering the effect of Plaintiff's obesity as required by Social Security Ruling ("SSR") 02-1p. (*Id.* at 20-21).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform a full range of medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), with the additional limitations that Plaintiff:

> can do no ladders, ropes, or scaffolds climbing, and cannot be exposed to any dangerous work hazards (unprotected heights and exposed moving machinery), and any extreme heat, humidity, and cold conditions. [Plaintiff] is limited to detailed, uninvolved work tasks not requiring a fast assembly quota pace, and not involving more than occasional required work

interactions with coworkers, supervisors, and the public. [Plaintiff] will be off-task 5 percent of the work day due to mental health exacerbations.

(*Id.* at 21). At step four, the ALJ found that Plaintiff was capable of performing her past relevant work as a house cleaner. (*Id.* at 25). The ALJ further found that there were other jobs in the national economy that Plaintiff could perform and made alternative findings for step five of the sequential evaluation process. (*Id.*). Specifically, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of routing clerk and checker. (*Id.* at 25-26). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 26).

## II. The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error

Plaintiff asks the Court to remand this matter to the Commissioner, arguing: (1) the ALJ improperly determined that Plaintiff's impairments did not meet Listings 12.03 and 12.15; (2) the ALJ did not properly analyze whether Plaintiff's conditions met or equaled Listings 12.03 and 12.15; (3) the ALJ failed to consider all of Plaintiff's impairments when determining that Plaintiff could perform medium work; and (4) the ALJ did not properly analyze the effect of Plaintiff's substance abuse on her impairments. (Dkt. 10-1 at 1-2, 15-

23). The Court has considered each of these arguments and, for the reasons discussed below, finds them to be without merit.

### A. The Step Three Determination

Plaintiff's first two arguments focus on step three of the sequential evaluation process. Specifically, Plaintiff argues that the ALJ erred by finding that his impairments did not meet of equal the requirements of Listings 12.03 and 12.15, and that the ALJ's analysis was deficient because she did not adequately explain why Plaintiff's impairments failed to meet these Listings. (*See* Dkt. 10-1 at 15-20).

"Plaintiff has the burden of proof at step three to show that [his] impairments meet or medically equal a Listing." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 272 (N.D.N.Y. 2009), *adopted*, 614 F. Supp. 2d 252 (N.D.N.Y. 2009). "To match an impairment in the Listings, the claimant's impairment must meet all of the specified medical criteria of a listing." *Loescher v. Berryhill*, No. 16-CV-300-FPG, 2017 U.S. Dist. LEXIS 61642, at *7 (W.D.N.Y. Apr. 24, 2017) (internal quotation and citation omitted). "If a claimant's impairment manifests only some of those criteria, no matter how severely, such impairment does not qualify." *Rockwood*, 614 F. Supp. 2d at 272 (internal quotations and citations omitted).

An ALJ is required to provide an explanation "as to why the claimant failed to meet or equal the Listings, '[w]here the claimant's symptoms as described by the medical evidence appear to match those described in the Listings.'" *Rockwood*, 614 F. Supp. 2d at 273 (quoting *Kuleszo v. Barnhart*, 232 F. Supp. 2d 44, 52 (W.D.N.Y. 2002)) (alteration in original). "[I]t is the ALJ's responsibility . . . to build an accurate and logical bridge from

the evidence to [his or her] conclusion to enable a meaningful review," and "[t]he Court cannot . . . conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered." *Loescher*, 2017 U.S. Dist. LEXIS 61642, at *7 (internal quotations and citations omitted) (second alteration in original). However, "[a]n ALJ's unexplained conclusion [at step three] of the analysis may be upheld where other portions of the decision and other 'clearly credible evidence' demonstrate that the conclusion is supported by substantial evidence." *Ryan v. Astrue*, 5 F. Supp. 3d 493, 507 (S.D.N.Y. 2014) (citation omitted).

Listing 12.03 addresses the schizophrenia spectrum and other psychotic disorders. Listing 12.03 requires a plaintiff satisfy subparts A and B, or A and C, of that Listing by showing:

> A. Medical documentation of <u>one</u> or more of the following:
>    1. Delusions or hallucinations;
>    2. Disorganized thinking (speech); or
>    3. Grossly disorganized behavior or catatonia.
>
> AND
>
> B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):
>    1. Understand, remember, or apply information (see 12.00E1).
>    2. Interact with others (see 12.00E2).
>    3. Concentrate, persist, or maintain pace (see 12.00E3).
>    4. Adapt or manage oneself (see 12.00E4).
>
> OR
>
> C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:

1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and
    2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

*See* 20 C.F.R. § 404, Subpart P, Appendix 1, Part 1, § 12.03.

Listing 12.15 addresses trauma- and stressor-related disorders. Listing 12.15 requires a plaintiff to meet the requirements of subparts A and B, or A and C, of that Listing by showing:

A. Medical documentation of all of the following:
    1. Exposure to actual or threatened death, serious injury, or violence;
    2. Subsequent involuntary re-experiencing of the traumatic event (for example, intrusive memories, dreams, or flashbacks);
    3. Avoidance of external reminders of the event;
    4. Disturbance in mood and behavior; and
    5. Increases in arousal and reactivity (for example, exaggerated startle response, sleep disturbance).

AND

B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):
    1. Understand, remember, or apply information (see 12.00E1).
    2. Interact with others (see 12.00E2).
    3. Concentrate, persist, or maintain pace (see 12.00E3).
    4. Adapt or manage oneself (see 12.00E4).

OR

C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
    1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and
    2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

*See* 20 C.F.R. § 404, Subpart P, Appendix 1, Part 1, § 12.15.

At step three, the ALJ explained that while the evidence showed that Plaintiff met subpart A of Listings 12.03 and 12.15, she did not meet the criteria of subparts B or C:

> [Plaintiff's] representative argues that [Plaintiff] meets or equals listings 12.03 or 12.15, for schizophrenic, paranoid, and other psychotic disorders, and trauma- and stress-related disorders, respectively. While [Plaintiff] has reported a history of hallucinations and a past history of multiple rapes, her testimony, treatment, and objective treatment findings do not support the degrees of "paragraph B" or "paragraph C" restrictions to meet or equal either listing, as discussed below.

(Dkt. 9 at 20).

Plaintiff contends that the evidence demonstrates that she met subpart C of Listings 12.03 and 12.15. (*See* Dkt. 10-1 at 17-18). Plaintiff further contends that, because Plaintiff's symptoms appeared to match the requirements described in Listings 12.03 and 12.15, the ALJ was required to more fully explain why Plaintiff failed to meet the requirements of those Listings. (*Id.* at 18-20).

As an initial matter, as to Plaintiff's contention that the ALJ did not explain why Plaintiff failed to meet the requirements of Listing 12.03 and 12.15, a review of the written determination reveals that is not the case. As noted by the ALJ at step three of the sequential analysis, she provided an explanation later in the written determination. (*See id.* at 20 (Plaintiff's "testimony, treatment, and objective treatment findings do not support the degrees of 'paragraph B' or 'paragraph C' restrictions to meet or equal either listing, <u>as discussed below</u>.")) (emphasis added). Given the ALJ's detailed discussion of evidence relevant to subpart C of Listings 12.03 and 12.15 later in the written determination, the Court is able to meaningfully review whether the ALJ's step three finding is supported by

substantial evidence. *See Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 79 (N.D.N.Y. 2005) ("Where the evidence of record permits [the court] to glean the rationale of an ALJ's decision, [the ALJ is not required to explain] why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.") (internal quotations and citations omitted) (alterations in original).

The Court has reviewed the written determination, as well as the medical record, and concludes that the ALJ's determination that Plaintiff failed to meet the criteria of paragraph C for Listings 12.03 and 12.15 is supported by substantial evidence. As noted above, to satisfy paragraph C for those Listings, a claimant must show a mental disorder that is "serious and persistent," meaning that the claimant has a medically documented history of the disorder over a period of two years. The claimant also must show that there is evidence of both medical treatment, mental health therapy, psychosocial support, or a highly structured setting that is ongoing and that diminishes the symptoms and signs of the mental disorder, as well as marginal adjustment, meaning minimal capacity to adapt to changes in the environment or to demands that are not already part of the claimant's daily life.

The record does not support that Plaintiff meets either of these requirements. As explained by the ALJ, Plaintiff "receives mental health counseling every three months, which is less frequent now than it was before, due to improved symptoms and functioning with psychotropic medications." (Dkt. 9 at 22; *see also id.* at 514-22 (treating notes from January, March, April, May, July, August, September, and October 2015 indicating that Plaintiff did not require "complex care"); *id.* at 619 (on September 20, 2016, "[d]ue to

increased stability and her need to work, TW and Shannon agreed she could meet once a month with counselor to work on treatment goals.")). Plaintiff's relatively infrequent therapy visits and reduction in treatment is not consistent with mental health treatment in a "highly structured setting," as required by paragraph C of Listings 12.03 and 12.15. In other words, Plaintiff's contention that she received various forms of mental health treatment since 2011 (*see* Dkt. 10-1 at 17) does not satisfy this requirement.

Nor does the evidence support a minimal capacity to adapt to changes in the environment, as required by paragraph C of Listings 12.03 and 12.15. For example, as noted by the ALJ, Plaintiff's recent mental health treatment notes revealed normal mental status examinations with a continued pattern of overall control with medication and therapy. (*Id.* at 23-24; *see also id.* at 532 (March 14, 2016 treatment note from Dr. Gupta noting that Plaintiff's "symptoms are controlled," her condition was stable, with a normal mental status examination); *id.* at 624 (July 18, 2016 treatment note from Dr. Gupta noting that Plaintiff was "doing well" and "denie[d] any symptoms," was compliant with her medications, and had a stable condition); *id.* at 627 (November 2, 2016 treatment note from Dr. Gupta noting that Plaintiff "was doing well," and had a normal mental status examination)). Further, Plaintiff testified at the administrative hearing that her medication, which relaxes and calms her, enables her to better cope with her mental health issues, including hallucinations and hearing voices. (*Id.* at 48-49). In other words, the evidence demonstrates that Plaintiff has had a positive response to treatment, with at least a minimal

capacity to adapt to changes in her environment.[2] The ALJ's conclusion that Plaintiff did not meet the requirements of Listings 12.03 and 12.15 is supported by substantial evidence, and remand on this basis is not warranted.

**B.     The RFC Determination**

Plaintiff next argues that the ALJ failed to consider all evidence of her impairments, as her subjective complaints do not support a finding that she can perform a full range of medium work with the additional limitations included in the RFC. (Dkt. 10-1 at 20-21). Plaintiff contends that the ALJ was required to consider Plaintiff's complaints regarding her mental and physical impairments when determining whether she could perform the requirements of medium work. (*Id.* at 20).

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). Further, it is well-settled that subjective complaints of an impairment are insufficient to establish a disability. *See Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009); *see also Mauro v. Comm'r of Soc. Sec.*, 746 F. App'x 83, 84 (2d Cir. 2019) ("subjective complaints alone are not a basis for an award of disability insurance benefits in the absence of corroborating objective medical evidence.").

---

[2]     Plaintiff contends that she is unable to adapt to changes in her daily life due to her inability to control her anger, history of violence, lack of patience, and dismissal from her GED classes due to poor attendance. (*See* Dkt. 10-1 at 17-18). However, as noted by the ALJ, the record demonstrates that Plaintiff's anger issues were reduced by abstinence and taking her medications. (Dkt. 9 at 23). Further, although Plaintiff was initially dismissed from GED classes due to lack of attendance, she later resumed GED classes, leaving only when she had the opportunity to start a daycare clinic. (Dkt. 9 at 614, 617, 619). These facts do not detract from the ALJ's finding that Plaintiff had a minimal capacity to adapt to changes in her environment.

- 13 -

Accordingly, to the extent that Plaintiff contends that the ALJ should have incorporated Plaintiff's subjective complaints into the RFC simply because they were included in the record, any such argument is meritless. Plaintiff's complaints, standing alone, do not constitute "medical evidence" sufficient to support a finding of disability.

Contrary to Plaintiff's assertion, the ALJ addressed her subjective complaints of pain when assessing the RFC. For example, the written determination discusses Plaintiff's back pain. (*See, e.g., id.* at 22 ("She has back problems, and was receiving injections, but discontinued treatment. She has had no surgical intervention, and is not currently receiving treatment."); *id.* ("She cannot sit for more than 15 minutes at a time, or stand for more than 5 minutes at a time, and she has difficulty bending.")). The ALJ also considered symptoms caused by Plaintiff's hyperthyroidism. (*See id.* at 22 ("She receives treatment for high blood pressure and hyperthyroidism."); *id.* ("Her thyroid disorder causes shortness of breath. Her medications cause tiredness. She has sleep disturbances at night, and naps during the day for hours.")).

Despite Plaintiff's reports of pain, the ALJ found that her complaints regarding the extent of her impairments were not entirely credible, based on her reports of activities, as well as relatively normal imaging results and physical examinations. (*Id.* at 22-23). The ALJ also explained that Plaintiff's hypertension and hyperthyroidism were controlled with medication. (*Id.* at 23 ("treating sources have noted hypertensive control with medication, and 2015 treatment records indicate the claimant's thyroid was largely controlled. She has had some medication updates with regular lab checks for her thyroid, but treating sources have also noted that noncompliance may have contributed to the claimant's reported

thyroid-related symptoms.")). In other words, the ALJ adequately explained her decision not to incorporate all of Plaintiff's reported limitations into the RFC, and this decision was proper and well-supported by the record. *See Ebert v. Berryhill*, No. 3:16-cv-1386(WIG), 2018 U.S. Dist. LEXIS 101805, at *16-17 (D. Conn. June 19, 2018) ("When determining a claimant's RFC, the ALJ is required to take into account the claimant's reports of pain and other limitations; the ALJ is not, however, required to accept the claimant's subjective complaints without question. Instead, the ALJ must weigh the credibility of the claimant's complaints in light of the other evidence of record."); *see also Hudson v. Berryhill*, No. 1:17-CV-00463 (MAT), 2018 U.S. Dist. LEXIS 162283, at *20 (W.D.N.Y. Sept. 21, 2018) ("A claimant's daily activities are a proper factor for the ALJ to consider in assessing credibility."). The Court further notes that the RFC for medium work with limitations is supported by the opinion of the consultative examiner, Donna Miller, D.O., who opined after an examination on March 18, 2015, that Plaintiff had mild limitations for heavy lifting, bending, carrying, pushing, and pulling. (*See id.* at 352-55). The ALJ then specifically explained how these considerations were factored into the RFC:

> Based on the claimant's testimony, her history of treatment, the objective clinical findings, and the opinions of record, the RFC limits the claimant to a full range of medium work, with no ladders, ropes, or scaffolds climbing, and no more than occasional postural motions otherwise. In the interests of safety, the RFC precludes exposure to dangerous work hazards, and further precludes exposure to extreme heat, humidity, and cold conditions, which could exacerbate the claimant's symptoms of her hypertension, hyperthyroidism, and lumbar disorder.

(*Id.* at 24).

Plaintiff also disputes the ALJ's consideration of her complaints relating to her mental health symptoms, including her anger issues and hallucinations. (Dkt. 10-1 at 20-

21). However, the written determination clearly discusses Plaintiff's mental health symptoms, including her history of violent behavior and "angry outbursts," as well as depression, anxiety with PTSD, and schizoaffective disorder. (Dkt. 9 at 23). While the ALJ acknowledged Plaintiff's mental health symptoms, she found that these symptoms were generally controlled with regular treatment, and noted that Plaintiff's mental status examinations were normal. (*Id.* at 23-24; *see also id.* at 620, 621, 622, 623, 624, 625, 626, 627 (mostly normal mental status examinations from March 14, 2016 through November 28, 2016); *id.* at 619 (on September 20, 2016, "[Plaintiff] appears to have increased stability since she has started taking her medications as prescribed.")). The ALJ explained how these considerations factored into the RFC:

> While the claimant said that she could not sustain the demands of the work activity, the record overall indicates that the claimant is capable of performing detailed, but uninvolved work tasks not requiring a fast assembly quota pace, with no more than occasional required interactions with co-workers, supervisors, and the public, and allowing for up to 5 percent off-task behavior for mental health exacerbations.

(*Id.* at 24). Accordingly, in assessing the RFC, the ALJ clearly took all of Plaintiff's subjective complaints into account, explained why she discounted some of those complaints, and assessed an RFC that is well-supported by the record. Remand is not required on this basis.

### C. Consideration of Plaintiff's Substance Abuse

Plaintiff's final argument is that the ALJ failed to consider whether her substance abuse and alcohol dependence were contributing factors material to the determination of disability. (Dkt. 10-1 at 22-23). Plaintiff refers specifically to 20 C.F.R. § 404.1535(b), which states, "[i]f we find that you are disabled and have medical evidence of your drug

addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability." *See also* 20 C.F.R. § 416.935(a) (same). As explained in *Santiago v. Berryhill*, No. 17-cv-00728F, 2019 U.S. Dist. LEXIS 10946 (W.D.N.Y. Jan. 23, 2019):

> The inquiry in determining whether alcoholism or drug addiction are contributing factors material to the determination of disability is whether the claimant would still meet the definition of disability under the Act if he or she stopped using drugs or alcohol. *See* 20 C.F.R. §§ 404.1535(b)(1), and 416.935(b)(1). If the claimant's remaining limitations would not be disabling, the claimant's drug or alcohol addiction is found to be a contributing factor material to the determination of disability and benefits will be denied. 20 C.F.R. § 404.1535(b)(2). Alternatively, if it is determined that the claimant's remaining limitations are disabling, the claimant will be deemed disabled independent of his drug or alcohol addiction such that the claimant's drug or alcohol addiction is not a contributing factor material to a finding of disability and benefits will be granted. 20 C.F.R. §§ 404.1535(b)(2), and 416.935(b)(2). To find that drug and/or alcohol use is material, an ALJ "must have evidence in the case record that establishes that a claimant with a co-occurring mental disorder(s) would not be disabled in the absence of [drugs or alcohol]."

*Id.* at *7-8 (quoting *Bukowski v. Berryhill*, No. 1:15-cv-00268-MAT, 2017 U.S. Dist. LEXIS 196139, at *7 (W.D.N.Y. Nov. 29, 2017)) (alteration in original). "The 'key factor' in this determination is 'whether [the Commissioner] would still find [the claimant] disabled if [he or she] stopped using drugs or alcohol.'" *See Quimby v. Comm'r of Soc. Sec.*, No. 1:09-CV-20, 2010 U.S. Dist. LEXIS 56235, at *13 (D. Vt. Apr. 13, 2010) (quoting 20 C.F.R. § 404.1535(b)(1)) (alterations in original), *adopted*, 2010 U.S. Dist. LEXIS 56419 (D. Vt. June 8, 2010).

At step two of the sequential analysis, the ALJ found Plaintiff's "history of substance abuse" to be a severe impairment. (Dkt. 9 at 19). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal one of the Listed impairments.

(*Id.* at 20). The ALJ then, when assessing the RFC, took into account all of Plaintiff's active symptoms, her current level of functioning, and that Plaintiff previously engaged in substance abuse. Specifically, the ALJ explained that Plaintiff "has a past history of substance abuse, but last used cocaine over a year prior to the hearing and is currently not having issues with alcohol." (*Id.* at 22; *see also id.* at 47-48 (at the administrative hearing, Plaintiff testified that, in the past, she received treatment for substance abuse issues, but it had been over one year ago that she last used cocaine, and she no longer overused alcohol)). The ALJ also noted that Plaintiff's anger issues and GAF score appeared to improve with abstinence from substance abuse. (*Id.* at 23- 24).

"The language of § 404.1535 makes it clear that the ALJ must *first* make a determination as to disability by following the five-step sequential evaluation process, without segregating out any effects that might be due to substance use disorders." *Piccini v. Comm'r of Soc. Sec.*, No 13-CV-03461 (AJN)(SN), 2014 U.S. Dist. LEXIS 88883, at *33 (S.D.N.Y. June 27, 2014) (internal quotations and citations omitted) (emphasis in original), *adopted*, 2014 U.S. Dist. LEXIS 133928, at *33 (S.D.N.Y. Sept. 17, 2014). "Once the claimant is found to be disabled, the ALJ then considers whether the drug addiction or alcoholism is a contributing factor by asking whether the claimant would still be considered disabled if he stopped abusing drugs or alcohol." *Id.* at *34 (citing *Cordero v. Astrue*, 574 F. Supp. 2d 373, 377 (S.D.N.Y. 2008)); *see also Morales v. Colvin*, No. 13cv06844 (LGS) (DF), 2015 U.S. Dist. LEXIS 58236, at *57-58 (S.D.N.Y. Feb. 10, 2015) ("an ALJ's initial disability determination should concern[] strictly symptoms, not causes. Only after the claimant has been determined to be disabled should the ALJ consider

whether the claimant would remain disabled if he stopped abusing drugs and alcohol.") (internal quotations and citations omitted) (alteration in original), *adopted*, 2015 U.S. Dist. LEXIS 58203 (S.D.N.Y. May 4, 2015). In other words, section 404.1535 requires a two-step inquiry; only after the ALJ finds that Plaintiff is disabled is she required to determine whether substance abuse was a contributing factor to the disability determination.

Accordingly, Plaintiff's argument that the ALJ failed to determine whether Plaintiff's substance abuse was a contributing factor material to the determination of disability is misplaced. Here, the ALJ properly discussed Plaintiff's history of substance abuse disorder when assessing Plaintiff's RFC, and prior to making the disability finding. Because the ALJ found that Plaintiff was not disabled, she was not required to examine whether Plaintiff's history of substance abuse was a contributing factor to her disability. *Tablas v. Apfel*, No. 98 Civ. 5430 (RMB), 2000 U.S. Dist. LEXIS 23350, at *6 (S.D.N.Y. Mar. 20, 2000) ("Under the Secretary's regulations, a finding of disability is a condition precedent to the application of [the rule that an individual will not be considered to be disabled if substance abuse is determined to be a contributing factor material to the finding of disability]."). Remand is not required on this basis.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 14) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 10) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: April 8, 2019
      Rochester, New York

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 14) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 10) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: April 8, 2019
      Rochester, New York